IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.

JOSHUA CARROLL,

      Plaintiff, on behalf of a
      Putative Class,

CLASS ACTION

v.

FANDUEL, INC.,

      Defendant.
_____/

## CLASS ACTION COMPLAINT

Plaintiff Joshua Carroll ("Plaintiff"), individually and on behalf of all other similarly situated customers of FanDuel, Inc. (the "Class"), brings this complaint against FanDuel, Inc. ("FanDuel", and/or "Defendant") (sometimes collectively referred to herein as "Defendant") and allege as follows:

1. Plaintiff brings this class action to secure injunctive relief and restitution for the Class against Defendant for false and misleading advertising in violation of Florida Statutes Section 817.415 and Florida Statutes Section 501.201 et. seq. as well as monetary damages based on breach of contract.

2. FanDuel is a fantasy sports website that permits individuals to play one-day fantasy sports games ("Product(s)"). To begin playing on FanDuel, an individual is required to place a deposit and create a FanDuel account. That person can then use the money on deposit to pay entry fees to partake in daily fantasy sports games. At the end of the sports day, the winner of each fantasy contest is then awarded prize money which is inserted into their FanDuel account. FanDuel takes a certain percentage of each overall pot for each fantasy sports game as a fee for hosting the fantasy game. Since FanDuel fancies its fantasy sports

*Carroll v. FanDuel, Inc.*
Class Action Complaint

games as a game of skill, it is not gambling. FanDuel is also in intense competition with several competitors to create market share for its games and aggressively markets on NFL games, sports television, sports radio and sports websites.

   3. As part of its promotion, FanDuel has continuously advertised that when you set up an account on the FanDuel website and make an initial deposit, FanDuel will match "dollar for dollar" that initial deposit up to $200 for all new members without any limitations. Specifically, television commercials for Fanduel.com have advertised the following:

    a. "Deposit now, and we'll match up to 200 bucks, dollar for dollar";

    b. "double your deposit with promo code"; and

    c. "deposit is 100% matched"

There are additional FanDuel television and radio advertisements that use different language to promote the same promise of a "dollar for dollar" match including representing that the match is for "free". However, this is totally untrue.

   4. Indeed, the Defendant falsely represents and does not adequately disclose and omits that the "Welcome Bonus", which is free, is not a "dollar for dollar" match but is based on a very intricate formula that requires continued play on the FanDuel site and investment of over 2500% the initial deposit. Specifically, the formula used by FanDuel does not match a single dollar. The "Welcome Bonus" is released as 4% of the entry fee of each contest entered. Accordingly, the customer does not receive a single dollar for making an initial deposit. Instead, the customer must spend his deposit money in order to receive a bonus, and upon spending his deposit money, receives only 4% of that money as a bonus.

*Carroll v. FanDuel, Inc.*
Class Action Complaint

5. For example, if a customer signs up and deposits $200 as his initial deposit, FanDuel does not match the customer's deposit with a bonus of $200, and the customer does not have $400 in his account. Instead, the customer is required to spend his deposit money and enter a contest. If the customer enters a contest for $200, spending his entire deposit on a single contest, FanDuel distributes a bonus of $8 (4% of the contest entry fee). Based on this formula, the customer that made an initial deposit of $200 will have to spend $5,000 in contest entry fees in order to receive FanDuel's deposit bonus of $200. In other words, that customer must invest an additional $4,800 with FanDuel, before FanDuel releases its promised $200 bonus.

6. So, for the Plaintiff, Carroll who put down an initial deposit of $25, FanDuel did not match his $25 deposit with $25. Carroll has never received a "dollar for dollar match" from FanDuel. When Carroll spent his $25 deposit on contests, FanDuel released $1 of his promised bonus (4% of the contest entry fee). In order for Carroll to receive his promised bonus of $25, he must spend a total of $625 in contests on FanDuel. Carroll must invest an additional $600 with FanDuel before FanDuel releases its promised $25 bonus.

7. Defendant's promotions violate §817.415, *Fla. Stat.*, because under that statute Defendant cannot offer goods or services unconditionally as either free or of no cost and require a consumer to incur a financial obligation as a condition of taking advantage of the free goods or service.

8. In this same vein, under §817.415, *Fla. Stat.*, Defendant cannot conditionally offer a treatment as "free" or the equivalent of free unless in its offer of a "free" match of initial deposits Defendant *clearly and conspicuously* states *all* conditions necessary to receive

*Carroll v. FanDuel, Inc.*
Class Action Complaint

the free treatment. Defendant has violated §817.415, *Fla. Stat.*, because in the Defendant's advertising it does not clearly and conspicuously state that a person is obligated to utilize 2500% of the initial deposit on fantasy contests in order to obtain its free match.

9.      Violations of Fla. Stat. §817.415, are *per se* violations of FDUTPA.

10.     Defendant's advertisements also become part of the contract between the Plaintiff and the putative class and the Defendant, which the Defendant breaches by non-performance.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are 100 or more Class Members and the aggregate amount in controversy exceeds Five Million Dollars ($5,000,000.00) exclusive of interest and costs.  Additionally, at least one Class Member is a citizen of a state different from the corporate domiciles of the Defendants.

12.     The Defendant at all relevant times herein conducted substantial business in this district and many of the violations occurred in this district, and many of the acts and transactions alleged in this Complaint occurred in this district.

13.     The Court has personal jurisdiction over the Defendant, who has at least minimum contacts with the State of Florida because the Defendant conducts business here and has availed itself of Florida markets through its promotion, sales and marketing efforts, as well as collection of monies from Florida Citizens.

14.     Florida's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class under the Due Process Clause, 14th Amendment, Section 1, and the Full Faith and Credit Clause, Article IV, Section 1, of the U.S. Constitution.  Florida has a

*Carroll v. FanDuel, Inc.*
Class Action Complaint

significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiffs, thereby creating state interests that ensure that the choice of Florida state law is not arbitrary or unfair.

15.     Venue in the United States District Court for the Southern District of Florida is proper because the Defendant resides in the District for purposes of venue and/or a substantial part of the events giving rise to the claims at issue in this Complaint occurred in this District.

16.     Venue is also proper in this Court because Defendant regularly transacts and solicits business in Miami-Dade County and Broward County, and Defendant has caused harm to Class Members residing within Miami-Dade County and Broward County.

## PARTIES

17.     Plaintiff is at all times relevant hereto a Florida citizen.  Plaintiff purchased the Product over the internet in the State of Florida as well.  In doing so, Plaintiff relied upon the advertising and other promotional material which were prepared and approved by Defendant and their agents and disseminated through its national advertising media, containing the misrepresentations alleged herein and designed to encourage consumers to purchase the Product.

18.     Defendant FanDuel is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located in New York City, New York.  FanDuel offers the Product for sale through its internet site throughout the nation, including the State of Florida.  FanDuel, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of

*Carroll v. FanDuel, Inc.*
Class Action Complaint

Florida.  FanDuel is the owner and distributor of the Product and is the company that created and/or authorized the false, misleading, and deceptive advertisements for the Product.

19. In committing the wrongful acts alleged herein, Defendant planned and participated in and furthered a common scheme by means of false, misleading, deceptive, and fraudulent representations to induce members of the public to purchase the Product. Defendant participated in the making of such representations in that each did disseminate or cause to be disseminated said misrepresentations.

20. Defendant, upon becoming involved with the creation, distribution, advertising, marketing, and sale of the Product, knew or should have known that the representations about the Product and, in particular, the "dollar for dollar" free match on initial deposits for the Product were false.  Defendant affirmatively misrepresented the Product, as set forth herein, in order to convince the public to purchase and use the Product, resulting in profits of millions of dollars or more to Defendants, all to the damage and detriment of the consuming public.

21. FanDuel ran its first radio advertisement in March 2011.  FanDuel ran its first Television advertisement in August 2012.  The Plaintiff is without knowledge as to when FanDuel first ran this misleading advertisement campaign.  However, the misleading ad campaign has successfully directly increased FanDuel's exposure and has directly increased the number of paying players. For example, in the past three (3) months (August, September and October 2014), FanDuel has brought in 650,000 new paying players based on this misleading advertising.  Moreover, FanDuel anticipates that it will take in $550 million dollars in entry fees for its fantasy contests this season alone.  *See* NBA Partners with FanDuel,

*Carroll v. FanDuel, Inc.*
Class Action Complaint

*ESPN.com,* Nov. 19, 2014.  A copy of the article is attached hereto an incorporated herein as Exhibit A.

## **FACTS AND DEFENDANT'S COURSE OF CONDUCT**

22. FanDuel engages in marketing campaigns that suggest that its fantasy sports are the leader in one-day fantasy sports game play.  They have put together a multi-million dollar advertising campaign focused on sports fanatics that play fantasy sports for fun with their friends and have induced these persons to participate on their website with the lure that winning fantasy sports on their website may result in million dollar payoffs.  As part of this advertising scheme, FanDuel entices these fantasy fanatics with promotions which are meant to make individuals believe that their initial deposits which are required in order to play on the FanDuel site would be immediately matched and would permit double the amount of play on the site based on the single deposit up to $200 and that the match would be free of charge.  So in other words, if a person deposited $10, that person would be immediately able to play $20 worth of fantasy games.

23. It is only after a person makes that individual deposit and tries to use the monies in their account, do they become aware that FanDuel has absolutely no intention to immediately match deposits "dollar for dollar," but rather will only provide additional monies in that players account over time and only after they continuously pay for additional games and either deposit additional monies and/or utilizes monies that they won on the site. Moreover, the individual is never told that the "dollar for dollar" match actually can be deleted from an account due to inactivity on the site.

*Carroll v. FanDuel, Inc.*
Class Action Complaint

24. During the course of their false, misleading, and deceptive advertising campaign, Defendant has sold millions of dollars more of its Product based upon Defendant's false promises. Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations.

25. When a person signs up for FanDuel, based on its false and misleading advertising of a free "dollar for dollar" match of the initial deposit, the user was required to use a specific promotion code ("Promotion Code") in order to obtain the free match. There are many different promo codes that have been advertised to be used for this deposit bonus. The Plaintiff does not know all of the promotion codes utilized by the Defendant for this promotion but this information will be determined through discovery.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action pursuant to Federal Rules of Civil Procedure Rule 23 on their own behalf and on behalf of all other persons similarly situated. The Class which Plaintiff seeks to represent comprises:

> All Florida Citizens who purchased FanDuel, using a Promotion Code. Excluded from the Class are Defendant's officers, directors, and employees.

Plaintiffs and the Class reserve the right to amend the Class definition as discovery proceeds and to conform to the evidence. Excluded from the Class are: any Defendant, and any subsidiary or affiliate of that Defendant, and the directors, officers and employees of that Defendant or its subsidiaries or affiliates, and members of the federal judiciary.

*Carroll v. FanDuel, Inc.*
Class Action Complaint

27. **Numerosity Rule 23 (a)(1):** The Class is comprised of thousands of Florida Citizens. The class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

28. The Class is identifiable and readily ascertainable as each person was required to use Promotion Codes when signing up with FanDuel in order to obtain the "welcome bonus". Notice can be provided to such purchasers using techniques and a form of notice customarily used in class actions, such as by direct mail based on Defendant's business records, internet publication, radio, newspapers, and magazines.

29. **Commonality and Predominance (Rule 23(a)(2); Rule 23(b)(3))**. There are common questions of law and/or fact that predominate over any questions affecting only individual members of the Class. These principal common issues include the following:

   a. Whether Defendant's conduct is a violation of Florida Statutes Section 817.415;

   b. Whether Defendant's conduct is a violation of Florida Statutes Section 501.201 et, seq.

   c. Are the Plaintiff and the Class entitled to monetary relief under Florida law;

   d. Are the Plaintiff and the Class entitled to injunctive relief under Florida law;

   e. Did the Defendant's conduct constitute a breach of contract entitling the Plaintiff and the Class to monetary relief under Florida law.

30. **Typicality Rule 23 (a)(3):** The claims of the Plaintiff are typical of the claims that would be asserted by other members of the Class in that, in proving its claims, Plaintiff will simultaneously prove the claims of all Class Members. Plaintiff and each class member

*Carroll v. FanDuel, Inc.*
Class Action Complaint

is a person that purchased FanDuel using a certain Promotion Code that is tied to one of the offensive advertisements described herein, and Plaintiff and each member of the Class will seek declaratory relief, injunctive relief and breach of contract damages to determine its rights and entitlement to damages.

31. **Adequacy (Rule 23(a)(4))**. The Plaintiff is a Florida Citizen who has no conflicts of interest and will fairly and adequately protect and represent the interests of each member of the Class. Additionally, the Plaintiff is fully cognizant of his responsibility as Class Representative and has retained experienced counsel fully capable of, and intent upon, vigorously pursuing the action. Indeed, class counsel has extensive experience in consumer class claims substantially similar to the claims posed in this litigation.

32. **Rule 23(b)(2).** Under Count I and II the Defendant acted or refused to act on grounds or in a manner generally applicable to all members of the Class, thereby making declaratory relief to the entire Class particularly appropriate.

33. Because Plaintiff seeks declaratory relief for Class Members under Rule 23(b)(2), the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the Defendant. Further, adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to the adjudication and may impair and impede their ability to protect their interests.

34. **Rule 23 (b)(3).** Under Count I and II, the Plaintiff and the Class seek a judgment finding that the Defendant has systematically breached the representation/promise by failing to

*Carroll v. FanDuel, Inc.*
Class Action Complaint

match, "dollar for dollar," a member of the Class' initial deposit, which will be based on objective data and will be easily ascertained through the Defendant's computer records based on standardized Promotion Codes.  Moreover, Defendant's class wide utilization of web based computer programs to control its entire business makes this claim particularly susceptible to class certification, as the court or finder of fact will easily be able to determine not only the affected members of the class, but the amount of their initial deposit that was not correctly matched by the Defendant.

35.     Count III seeks payment of money damages based on the breach of contract. There will be no significant individual questions related to liability with respect to Count III because the Defendant's liability arises from the same pattern and practice of not matching person's initial deposit without paying additional amounts over the initial deposit.  Indeed, these determinations will merely require a formulaic recalculation utilizing the Defendant's own computer software.  Accordingly, the method for proving damages for each Class Member will be identical, and as a corollary, common issues predominate and class treatment of Plaintiff's claims is easily maintainable and superior to individual lawsuits.

36.     **Rule 23(c)(4).**  In the alternative, if the Court is not inclined to certify a monetary damage class it can certainly certify an issue class with respect to the Defendants' liability on a class-wide basis and then proceed in accordance with the Federal Rules of Civil Procedure and employ other mechanisms at its disposal with respect to damages of individual members of the Class.

*Carroll v. FanDuel, Inc.*
Class Action Complaint

# COUNT I
## FDUPTA---CLASS ALLEGATIONS FOR DAMAGES BASED ON ADVERTISING OF "FREE" GOODS AND SERVICES

37. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

38. This is an action for actual damages pursuant to Chapter 501, Part II, *Fla. Stat.*, the "Florida Deceptive and Unfair Trade Practices Act" ("FDUTPA").

39. Plaintiff and Class Members are "consumers," and Defendant at all material times has engaged in "trade or commerce" as defined in § 501.203, *Fla. Stat*.

40. Section 501.204(1) of FDUTPA prohibits Defendant from engaging in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

41. A violation of FDUTPA may be based on the Act itself and on:

   a. "The standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts;" and/or

   b. "Any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices."

42. As set forth above, §817.415, *Fla. Stat.*, governs offers for sale and every communication offering the sale of items using the word "free" or its equivalent.

43. Defendant's goods and services are "items" as defined in §817.415(3)(c), *Fla. Stat*.

*Carroll v. FanDuel, Inc.*
Class Action Complaint

44. As set forth above, Defendant's offer to match initial deposits, "dollar for dollar," constitutes the offer of "free" goods or services in accordance with the statute.

45. Because Defendant unconditionally offered goods and/or services as free, these goods or services must in fact be free, without obligation or requirement of consideration in any form. *See* §817.415(4), *Fla. Stat*. Defendant's offers of free "dollar for dollar" match violate §817.415(4), *Fla. Stat.*, because Defendant conditions its offer of free "dollar for dollar" match upon the consumer's incurring a financial obligation as a condition of taking advantage of the free good or service. Section 817.415 (6), *Fla. Stat.*, states that "[a]ny violation of this section is declared to be a deceptive trade practice and unlawful." Thus, under § 501.203(3), *Fla. Stat.*, Defendant has committed a *per se* violation of FDUTPA.

46. In this same vein, under §817.415(5), *Fla. Stat.*, Defendant cannot conditionally offer a good or service as free under the statutes unless Defendant in its offer of such goods and services clearly and conspicuously states all conditions necessary to receive the free goods and/or services. Defendant has violated §817.415(5), *Fla. Stat.*, because Defendant's advertising of its "dollar for dollar" offer does not conspicuously state that a consumer is obligated to continue to play fantasy sports games and continue to spend as much as 2500% of its initial deposit to obtain the free goods and services. Section §817.415(6), *Fla. Stat.*, states that "[a]ny violation of this section is declared to be a deceptive trade practice and unlawful." Thus, under §501.203(3), *Fla. Stat.*, Defendant has committed a *per se* violation of FDUTPA.

47. As set forth above, Plaintiff and the Class Members were aggrieved and suffered actual damages as a direct and proximate result of the Defendant's unfair, unconscionable or deceptive practices.

*Carroll v. FanDuel, Inc.*
Class Action Complaint

48. Pursuant to Fla. Stat. §501.211(1) Plaintiff also requests declaratory and injunctive relief to prohibit the continued advertising as described herein.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendant as follows:

a. Certifying the Class pursuant to Rule 23 (b)(2) and (b)(3) *Fed. R. Civ. P.*, and appointing Plaintiff as representative for said Class Members and Plaintiff's counsel as Class Counsel;

b. Awarding actual damages;

c. Awarding pre-and post-judgment interest, as allowed by law;

d. Granting an injunction to prohibit further advertising as described herein;

e. Granting an injunction requiring the Defendant to provide the dollar for dollar match without any additional play;

f. Awarding reasonable attorney's fees and costs to Class Counsel; and

g. Granting such other and further relief as is just and proper.

## COUNT II
## FDUPTA---CLASS ALLEGATIONS FOR DAMAGES BASED ON DEFENDANT'S CONDUCT OTHER THAN ADVERTISING FOR "FREE" GOODS AND/OR SERVICES

49. Plaintiff hereby incorporates by reference in paragraphs 1-36 as more fully set forth therein.

50. This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq*. (the "Act"). The stated purpose of the Act is to "protect the consuming public . . . from those who engage in unfair methods of competition, or

*Carroll v. FanDuel, Inc.*
Class Action Complaint

unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

51. Plaintiff is a consumer as defined by Fla. Stat. §501.203. FanDuel's fantasy sports game contests are a good or service within the meaning of the Act. Defendant is engaged in trade or commerce within the meaning of the Act.

52. Fla. Stat. §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

53. Defendant has violated the Act by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

54. Plaintiff and the Class have been aggrieved by Defendant's unfair and deceptive practices in that they placed an initial deposit with FanDuel and have not been provided a "dollar for dollar" match of that deposit without continued use and financial commitment to FanDuel.

55. The damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendant, as more fully described herein.

56. Pursuant to Fla. Stat. §501.211(1), Plaintiff and the Class seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

*Carroll v. FanDuel, Inc.*
Class Action Complaint

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief and judgment against Defendant as follows:

   a.  Certifying the Class pursuant to Rule 23 (b)(2) and (b)(3) *Fed. R. Civ. P.*, and appointing Plaintiff as representative for said Class Members and Plaintiff's counsel as Class Counsel;

   b.  Awarding actual damages;

   c.  Awarding pre-and post-judgment interest, as allowed by law;

   d.  Granting an injunction to prohibit further advertising as described herein;

   e.  Granting an injunction requiring the Defendant to provide the dollar for dollar match without any additional play;

   f.  Awarding reasonable attorney's fees and costs to Class Counsel; and

   g.  Granting such other and further relief as is just and proper.

## COUNT III
## CLASS ALLEGATIONS FOR BREACH OF CONTRACT

57.  Plaintiff hereby incorporates by reference in paragraphs 1-36 as more fully set forth therein.

58.  The Defendant made an offer to the Plaintiff and the Class which included a "dollar for dollar" match of a person's initial deposit.

59.  The Plaintiff and the Class accepted the Defendant's offer by signing up on the FanDuel website and utilized a Promotion Code which required the "dollar for dollar" match.

*Carroll v. FanDuel, Inc.*
Class Action Complaint

60. The Defendant breached its contract to the Plaintiff and the Class by not providing a "dollar for dollar" match of the initial deposit, but rather required extensive additional deposits or outlaying of monies in order to obtain the match.

61. The Defendant's conduct has caused the Plaintiff and the Class damages giving rise to the claims herein.

WHEREFORE, the Plaintiff, individually and on behalf of the Class requests that a judgment be entered against the Defendant for its damages, costs, interest and any other relief this Court deems just and reasonable.

### Jury Trial Demand

The Plaintiff, individually and on behalf of the Class hereby demands a trial by jury of all issues that can be tried by a jury.

Dated: <u>November 20, 2014</u>

Respectfully submitted,

*s/Edward H. Zebersky, Esq.*
Edward H. Zebersky, Esq. (FBN: 908370)
Todd S. Payne, Esq. (FBN: 834520)
ZEBERSKY PAYNE, LLP
110 S.E. 6th Street, Suite 2150
Ft. Lauderdale, FL  33301
Telephone:     (954) 989-6333
Facsimile:      (954) 989-7781
Email:  *ezebersky@zpllp.com*

and

Philip A. Gold, Esq. (FBN: 32550)
GOLD & GOLD, P.A.
2121 Ponce de Leon Blvd., Suite 740
Coral Gables, FL  33134
Telephone:     (305) 567-2525
Facsimile:      (305) 567-2575
Email:  *pgold@goldlawpa.com*

*Attorneys for Plaintiff*